# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**JULIE LEVESQUE,**

    Plaintiff,

v.                                                    Case No: 6:16-cv-1580-Orl-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

## MEMORANDUM OF DECISION

Julie Levesque (Claimant) appeals the Commissioner of Social Security's final decision denying her applications for a period of disability and disability insurance benefits. Doc. 1. Claimant argues that the Administrative Law Judge (ALJ) erred by: 1) failing to comply with Social Security Ruling 00-4p; and 2) failing to properly weigh the opinions of Claimant's treating gastroenterologist, Dr. Lisa A. Panzini, M.D. Doc. 18 at 13-21. Claimant requests that the matter be remanded for further administrative proceedings. *Id*. at 25. For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY.

This case stems from Claimant's applications for a period of disability and disability insurance benefits. R. 18. Claimant alleged a disability onset date of May 1, 2012. *Id*. On June 19, 2015, the ALJ entered a decision finding that Claimant was capable of performing light work and could perform her past relevant work. R. 18-28. Thus, the ALJ concluded that Claimant was not disabled. R. 28. Claimant filed a request for review of the hearing decision. R. 12. On July 9, 2016, the Commissioner's Appeals Council denied the request for review. R. 1-6. On

September 9, 2016, the Complaint was timely filed in this Court requesting that this Court reverse the decision of the Commissioner or, in the alternative, remand the case for a *de novo* hearing. Doc. 1. This action is therefore ripe for judicial review under 42 U.S.C. § 405(g).

## II. **THE ALJ'S DECISION.**

The ALJ issued the operative decision on June 19, 2015. R. 18-28. The ALJ found that Claimant had the following severe impairments: scleroderma; left wrist tendinitis; left ulnar neuritis. R. 20. The ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals any listed impairment. R. 22-23

The ALJ found that "[C]laimant had the residual functional capacity [(RFC)] to perform light work as defined in 20 CFR 404.1567(b) except with no more than occasional bilateral fine and gross manipulation." R. 22-23.[1] The ALJ, in light of this RFC, found that Claimant was able to perform her past relevant work as a realtor. R. 27-28. Thus, the ALJ found that Claimant was not disabled from her alleged onset date, May 1, 2012, through the date last insured, December 31, 2014. R. 28.

## III. **STANDARD OF REVIEW.**

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

IV. <u>**ANALYSIS**</u>.

    **A. Social Security Ruling 00-4p.**

Claimant asserts that the ALJ failed to apply the correct legal standards at step four of the sequential process, and that the ALJ's decision is not supported by substantial evidence, because the ALJ failed to comply with Social Security Ruling (SSR) 00-4p. Doc. 18 at 13-14. According to Claimant, the ALJ erred by failing to resolve a conflict between the testimony of the Vocational Expert (VE) and the Dictionary of Occupational Titles (DOT). *Id*. The Commissioner argues in response that, pursuant to SSR 00-4p, the ALJ must only resolve such a conflict if the ALJ is aware of that conflict, although the Commissioner admits that there was, in fact, a conflict between the

VE's testimony and the DOT. Thus, because the ALJ was not aware of the conflict, the ALJ was not obligated to resolve the conflict and, in turn, did not violate SSR 00-4p. Doc. 18 at 14-17.

At step four of the sequential evaluation process, the ALJ must determine a claimant's RFC and ability to do past relevant work. *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1520(a)(4)(iv)). The ALJ may rely on a VE's testimony in determining whether a claimant can perform his or her past relevant work. *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005) (citing 20 C.F.R. § 404.1560(b)(2)). In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which is accurate and includes all of a claimant's limitations. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ, however, is not required to include each and every symptom of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical findings that the ALJ properly rejected as unsupported, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004), in the hypothetical question.

Further, the Eleventh Circuit has explained that "[i]f there is a conflict between the DOT and the jobs identified by a VE in response to the hypothetical question, the testimony of the vocational expert 'trumps' the DOT because 'the DOT is not the sole source of admissible information concerning jobs.'" *Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (quoting *Jones v. Apfel,* 190 F.3d 1224, 1229-30 (11th Cir. 1999)). Indeed, "[t]he DOT is not comprehensive, . . . the SSA does not consider it to be dispositive [, and] a VE is 'an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.'" *Id*. (quoting *Phillips,* 357 F.3d at 1240). Specifically, as to the SSR at issue here, the Circuit explained that:

> SSR 00-4p states that when a VE provides evidence about the requirements of a job or occupation, the ALJ has an affirmative responsibility to ask about any possible

conflict between that VE's testimony and the DOT. SSR 00-4p. When the VE's testimony is inconsistent with the DOT, the ALJ must resolve this conflict before relying on the VE to determine whether the individual is or is not disabled.

*Id.* In *Leigh*, the VE did not alert the ALJ to any conflict between the DOT and the VE's testimony, and the Circuit found that, even if there were a conflict between the DOT and the VE's testimony, the ALJ did not err in simply relying upon the VE's testimony. *Id.* (citing *Jones,* 190 F.3d at 1229-30 (explaining that the testimony of a VE trumps the DOT where there is an inconsistency)); *see also Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795-96 (11th Cir. 2011) (even assuming that an inconsistency existed, no error in relying on VE testimony because it trumps any inconsistent provision of the DOT); *Peeler v. Comm'r of Soc. Sec.*, 400 F. App'x 492, 496 (11th Cir. 2010) ("The ALJ did not err in relying on Dr. Feldman's testimony even if it conflicted with information in the DOT because under our precedent Dr. Feldman's testimony trumps the DOT."); *Sollars-D'Annunzio v. Astrue*, No. 5:08-CV-80-OC-GRJ, 2009 WL 302170, at *9-10 (M.D. Fla. Feb. 6, 2009) (finding that "the law of the Circuit provides that where there is a conflict between the testimony of the VE and the description in the DOT the testimony of the VE trumps the DOT").

In addition, pursuant to SSR 00-4p, the ALJ is only required to resolve a conflict between the DOT and the VE's testimony if the ALJ is aware of that conflict. *See Sollars-D'Annunzio*, 2009 WL 302170, at *9 ("SSR 00–4p only requires the VE to resolve the conflict when he is made aware of the conflict"). As the court in *Sollars-D'Annunzio* explained:

> The ALJ has two obligations under SSR 00–4p with regard to reconciling any conflict between the testimony of the VE and the DOT. First, "[w]hen a VE ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflicts between that VE ... evidence and information provided in the DOT." This means the ALJ must ask if there is a conflict. The second requirement under SSR 00–4p provides that "when there is an apparent unresolved conflict between VE ... evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE ... evidence to support a determination or decision about whether

the claimant is disabled." This means that where the ALJ learns of a conflict he is required to discuss and resolve the conflict.

*Id*. (internal citations omitted). In that case, the court found that "the ALJ complied with this obligation by directing the VE to point out any conflicts," based on the following colloquy:

> ALJ: Let me request from you at the outset that if there are any conflicts with the information that you provide with the Dictionary of Occupational Titles including its companion publication, The Selected Characteristics of Occupations defined in the revised Dictionary of Occupational Titles, that you advise me. Otherwise, I will assume there are no such conflicts. Is that fair?
>
> VE: Yes, Your Honor.

*Id*. Thus, the court found that "by expressly directing the VE to advise the ALJ of any inconsistencies, the ALJ satisfied the first requirement of SSR 00-4p." *Id*. If the VE does not advise the ALJ of a conflict, and the ALJ is not otherwise aware of a conflict, there is no violation of SSR 00-4p. *See id.*; *see also Wright v. Comm'r of Soc. Sec.*, No. 6:12-CV-1640-ORL-31, 2014 WL 982626, at *9 (M.D. Fla. Mar. 12, 2014) ("The plain language of the SSR provides that the ALJ should inquire on the record as to whether the testimony is consistent with the DOT and, when there is an *apparent* unresolved conflict, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE evidence.") (emphasis in original).

Here, the ALJ expressly directed the VE to advise the ALJ of any conflict between the VE's testimony and the DOT, and the VE failed to make the ALJ aware of any such conflict. R. 53-54. The following colloquy took place at the hearing:

> ALJ: [VE], do you understand that if you give us an opinion which conflicts with the information in the Dictionary of Occupational Titles, that you need to advise us of the conflict and the basis for your opinion?
>
> VE: Yes.

*Id*. Thus, as in *Sollars-D'Annunzio*, the ALJ fulfilled the ALJ's first obligation under SSR 00-4p. Receiving no information about a possible conflict, and there being no objection by Claimant or her counsel, the ALJ was not required to make an independent inquiry as to whether or not the VE's testimony was consistent with the DOT. *See Dickson v. Comm'r of Soc. Sec.*, No. 5:13-CV-48-OC-DNF, 2014 WL 582885, at *5 (M.D. Fla. Feb. 13, 2014) ("SSR 00-4p does not require an ALJ to independently investigate whether a conflict exists, it simply requires that that ALJ ask the vocational expert if a conflict does exist, and if a conflict exists, then the ALJ must explain and resolve the conflict.") (citation omitted); *Sollars-D'Annunzio*, 2009 WL 302170, at *9 ("Where, as here, the ALJ has requested the VE to point out any conflicts and there is no evidence that a conflict was otherwise brought to the attention of the VE, there is no violation of SSR 00–4p."). Therefore, the ALJ did not err at step four of the sequential process by purportedly failing to comply with SSR 00-4p.

**B. Dr. Panzini's Opinion.**

Claimant asserts that the ALJ's reasons for assigning no significant weight to Dr. Panzini's opinions were not based on the correct legal standards and are not supported by substantial evidence. Doc. 18 at 17-21. Thus, Claimant argues that the ALJ erred by assigning no significant weight to Dr. Panzini's opinion. *Id*. The Commissioner counters that the ALJ applied the correct legal standard to Dr. Panzini's opinions and provided good cause reasons for assigning Dr. Panzini's opinions no significant weight, each of which reasons were supported by substantial evidence. Doc. 18 at 21-25.

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process. *Phillips*, 357 F.3d at 1238. The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his

impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. § 404.1546(c).

The consideration and weighing of medical opinions is an integral part in determining the claimant's RFC. The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c).

A treating physician's opinion must be given controlling weight, unless good cause is shown to the contrary. *See* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179. There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179.

The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion. *Id*. The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence. *Id*.

The record reveals that Claimant began treating with Dr. Panzini in 2005. R. 643. But Claimant did not see Dr. Panzini from about 2005 through 2012. R. 472. Thereafter, as discussed in the following paragraphs, Claimant saw Dr. Panzini a few times 2012 and once in 2013.

In 2005, Dr. Panzini performed a panendoscopy on Claimant due to Claimant's "long standing scleroderma and progressive dysphagia." R. 338. Following that procedure, Dr. Panzini prescribed a "beefed up" anti-reflux regime and suggested that she would follow up with Claimant. *Id*. Prior to that procedure, Claimant complained to Dr. Panzini of heartburn and difficulty swallowing, but Dr. Panzini noted that Claimant complained of "an annoying tight feeling on the skin of her face and crossing her joints" and noted that she "is sometimes fatigued," although Claimant did "not have any restricted range of motion and can open her mouth adequately to eat without difficulty." R. 339-40. On physical examination, Dr. Panzini noted that Claimant's "extremities [were] grossly within normal limits with the exception of tightening of skin across digits." R. 340.

Most relevant here, Dr. Panzini treated Claimant on at least two occasions in 2012 in relation to esophageal dysphagia. In July 2012, Dr. Panzini saw Claimant for the first time since 2005. R. 472. At that time, Claimant complained of difficulty swallowing. *Id*. Dr. Panzini noted that Claimant had "substantial scleroderma" and resulting skin changes on her face and fingers. *Id*. Claimant self-reported that she was working as a realtor but was having difficulty "keeping up" and was "attempting to get disability." *Id*. On physical examination, Dr. Panzini's findings were unremarkable and did not include any findings indicative of functional limitations; it appeared that Claimant treated with Dr. Panzini solely in relation to her esophageal issues. *Id*. In September 2012, Dr. Panzini performed another panendoscopy on Claimant and, this time, dilated Claimant's esophagus. R. 449. At a follow-up in October 2012, Dr. Panzini stated that Claimant's dysphagia had "been completely relieved," although she noted that the esophageal stricture would likely reoccur at some point. R. 470. Dr. Panzini noted that Claimant had gained weight and "is looking and feeling well." *Id*.

On April 16, 2013, Dr. Panzini saw Claimant for a "routine follow-up" and determined that, if Claimant's symptoms progress, then Dr. Panzini may perform another esophageal dilation. R. 575. In addition, Dr. Panzini stated as follows in a letter to Ms. Arcuni:

> As you know, Julie has fairly severe scleroderma. It has really limited her ability to work as a realtor or at any other job. She has been attempting to get disability and it is my opinion that she is appropriate for disability. To that end, she asked me to write her a letter, which I have done. I am hopeful this will help her to obtain permanent disability, as I think her medical condition justifies it, and I will see her when she returns from Florida.

*Id*. On that same day, as she stated, Dr. Panzini wrote the following letter

> Julie has been in my care since approximately 2005. She has scleroderma that affects many of her organs. She has difficulty swallowing on the basis of scleroderma involvement of her esophagus. She has difficulty standing or sitting because of joint involvement, and has chronic ulcerations of her digits that makes it difficult to impossible for her to type or handle papers. As you know, she has worked in the past as a realtor. At this time, her disease has advanced to the point that she really can no longer in this function. I do not see what employment she will be able to maintain in light of her inability to sit or stand for long periods of time and her inability to use her hands well.

R. 643.[2]

On July 9, 2013, Dr. Panzini completed a Gastrointestinal Disorders Impairment Questionnaire (the Assessment). R. 690-695. The Assessment is the only opinion of Dr. Panzini that Claimant actually discusses in any detail in her brief. Doc. 18 at 18-19. In the Assessment, Dr. Panzini listed Claimant's diagnosis as scleroderma and listed the positive clinical findings as loss of appetite, fatigue, weight loss, and difficulty swallowing. R. 690-91. Dr. Panzini did not indicate that pain or any other physical clinical indication was present. R. 691. Dr. Panzini then listed Claimant's "general" symptoms as "fatigue, malaise, [and] chronic ulceration of digits." *Id*. Dr. Panzini checked boxes indicating that there is evidence of malnutrition, malabsorption,

---

[2] The Court notes that Dr. Panzini appears to have exaggerated the duration of her treatment in a letter seeking to secure disability benefits for Claimant.

abscesses, and multiple recurrent inflammatory lesions, amongst other things. R. 691-92. Then, although Dr. Panzini did not check the box indicating that Claimant had positive clinical findings related to pain, Dr. Panzini stated that Claimant had "pain from scleroderma and subsequent digital ulceration" located at "all joints" that "always" was present, and that was moderate to severe. R. 692. Dr. Panzini then opined as to several, severe functional limitations. R. 693-95. For example, according to Dr. Panzini: Claimant's pain, fatigue or other symptoms were "frequently" severe enough to interfere with attention and concentration; Claimant was incapable of even low stress work; in an eight-hour day, Claimant could sit only one hour and stand or walk only one hour; Claimant could lift and carry only 0-5 pounds, and do so only occasionally; and Claimant would be absent from work more than three times per month. *Id*. Finally, Dr. Panzini stated that these symptoms and limitations apply to the "last couple of years" and referred to the "comments from rheumatologist." R. 695.

The ALJ discussed Dr. Panzini's opinion, and assigned it no significant weight, explaining as follows:

> As for the opinion evidence, Lisa Panzini, MD, the claimant's gastroenterologist, completed multiple Medical Source Statements in support of the claimant's disability application (Exhibits 28F, 29F, and 3lF). Dr. Panzini noted the claimant's scleroderma condition limited her ability to work and justified a finding of disability. I give no significant weight to Dr. Panzini's statements as they are not well supported by her own treatment records, which reflect resolution of the claimant's dysphagia condition with esophageal dilation, and are not bolstered by the other substantive evidence of record, including rheumatology records that note the claimant's stable scleroderma condition, and results of numerous physical examinations documented throughout the record from multiple sources that fail to identify persistent and significant functional limitations.

R. 27. Thus, the ALJ assigned Dr. Panzini's opinions little weight because her opinions were: 1) not well supported by her own treatment records; and 2) inconsistent with the medical evidence of record. *Id*.

Claimant asserts that the ALJ mischaracterized Dr. Panzini's opinions and that the medical evidence of record supports Dr. Panzini's opinions. Doc. 18 at 19-21. In making the latter argument, Claimant points primarily to medical records supporting her wrist and elbow impairments, which the ALJ took into consideration in formulating the limitations contained within the RFC. *See id.* In addition, the Court notes that Claimant did not challenge the ALJ's finding that Dr. Panzini's opinions were not well supported by Dr. Panzini's own treatment records. *See id.*

The undersigned finds that the ALJ stated good cause to assign Dr. Panzini's opinions no significant weight. As an initial matter, the Court notes that Claimant did not challenge the ALJ's finding that Dr. Panzini's opinions were not well supported by Dr. Panzini's own treatment records and, thus, has waived such a challenge. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (refusing to consider an argument that the claimant failed to raise before the district court). Regardless, Dr. Panzini's opinions are inconsistent with her own treatment records, which, as the ALJ noted, reflect a resolution of Claimant's dysphagia following esophageal dilation.

Further, when considering Dr. Panzini's treatment records, it is important to put Dr. Panzini's treatment of Claimant in context. Dr. Panzini is a gastroenterologist[3] who treated Claimant for problems swallowing solids and liquids related to esophageal problems arising from Claimant's scleroderma. Dr. Panzini's treatment records reflect such treatment – focused upon Claimant's esophageal problems. Yet, in the Assessment, Dr. Panzini states that Claimant has serious functional limitations related to Claimant's ability to walk, sit, stand, lift, and concentrate

---

[3] Gastroenterology is "a branch of medicine concerned with the structure, functions, diseases, and pathology of the stomach and intestines." Merriam-Webster.

due to pain, fatigue, or other symptoms. Looking to Dr. Panzini's treatment records, there is little indication that Dr. Panzini conducted physical examinations of Claimant that would detect such functional limitations, and no indication that Dr. Panzini treated Claimant for symptoms that would cause those functional limitations. Despite this, when asked to opine in relation to Claimant's disability application, Dr. Panzini wrote a letter stating that Claimant was unable to work and also completed the Assessment, checking boxes to indicate that Claimant suffered from several, serious, functional limitations. While the Court recognizes that a treating physician may, for various, legitimate reasons, not include functional limitations within her treatment notes,[4] the Court finds that, here, there is simply no support in Dr. Panzini's treatment records for her opinion that Claimant suffered from the functional limitations set forth in the Assessment. Further, as the ALJ noted, the condition for which Dr. Panzini was treating Claimant, esophageal dysphagia, resolved successfully when treated by Dr. Panzini with esophageal dilation. Finally, Dr. Panzini indicated in the Assessment that pain was not clinically found, but also identified as an existing symptom constant, severe to moderate pain in all of Claimant's joints. In that respect, either the Assessment itself is internally inconsistent, or those inconsistencies are simply a tacit admission by Dr. Panzini that there were no positive clinical findings of pain in her physical examinations of Claimant – a fact that is supported by the medical evidence of record. Thus, the ALJ's

---

[4] In conducting this analysis, the Court is fully cognizant that "[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel. It is 'not to provide evidence for disability determinations.' The mere fact that a doctor's judgments about a claimant's work-related limitations are not expressly reflected in treatment notes does not necessarily mean that the judgments are inconsistent with the treatment notes.'" *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 735-36 (11th Cir. 2017) (internal citations omitted). However, here, the Court notes the nature of the medical records, the repeated physical examinations referenced therein, and the lack of any symptoms or clinical findings that would support the functional limitations in the Assessment.

determination that Dr. Panzini's medical records are inconsistent with her opinions is supported by substantial evidence.

In addition, Dr. Panzini's opinions are, as the ALJ found, not bolstered by the medical evidence of record. For example, prior to the alleged onset date, in 2009, Claimant's gynecologist noted that Claimant's "scleroderma situation seems to be under good control." R. 350. In June 2012, Claimant's gynecologist noted that Claimant's "scleroderma seems to be reasonably stable." R. 447. In October 2011, Claimant complained to another physician that she "is exhausted all the time and her hands and her body aches," but upon physical examination the examining physician noted no acute distress, overwhelmingly normal physical findings, and 5/5 strength on her upper and lower extremities. R. 398-402. Further, the examining physician opined that "[t]he only suggestion of problems is swallowing difficulty and some tightness of the skin around her mouth. . . . Most of her functional complaints seem to be related to her anxiety and insomnia." R. 402. In November 2011, Claimant's treating internal medicine physician wrote a letter stating that Claimant suffered from systemic scleroderma and, as a result, Claimant suffered from "profound fatigue and inability to gain and maintain weight." R. 406. That doctor opined that Claimant's "fine motor ability is impaired by the disease affecting her fingers," but noted no other functional limitations. *Id.*

In 2012 and 2013, following the alleged onset date, Claimant treated with Suzanne Arcuni, APRN, as a primary care practitioner, and those treatment records contained no indications of any functional limitations. *See, e.g.*, R. 503, 505, 507, 510, 512, 514, 521, 545, 547, 549. During those visits, Claimant complained of various ailments, such as an eye lesion (R. 503, 505), shoulder pain (R. 503, 505), clogged-feeling ear (R. 503), migraines (R. 507), an insect sting suffered while trimming her lawn (R. 510), sleeping problems (R. 512), a rib injury from a fall suffered outside

at a bonfire (R. 545), and left wrist pain (R. 547). But, overwhelmingly, Ms. Arcuni recommended conservative treatment and Claimant's physical examinations were unremarkable, and included findings of no acute distress (R. 503, 505, 507, 510, 512, 514, 545, 547, 549), well-nourished (R. 503, 505, 507, 510, 512, 514, 545, 547, 549), normal range of motion (R. 505, 512, 521), normal muscle strength (512, 521), negative for fatigue and weakness (R. 517-18), and denials of fatigue and weakness (R. 510).

In January 2013, Claimant treated with Dr. Lenore Buckley, a rheumatologist, at the referral of Ms. Arcuni, for the purpose of a second opinion in relation to Claimant's scleroderma. R. 481. There, Claimant complained of "fatigue, insomnia, neck and shoulder pain" and stated that she felt she could no longer work and had applied for disability. *Id.* However, Claimant's physical examination was overwhelmingly normal, negative for fatigue and muscle weakness, and, with the exception of "thickening of the skin," callouses, and "decreased extension of PIP," Claimant's "upper and lower extremity exam [was] otherwise normal." R. 482. Dr. Buckley opined that Claimant's scleroderma "appears to be in a stable phase." *Id.* Dr. Buckley's treatment plan appeared to be conservative, and involved a discussion of the complications of scleroderma, annual and biannual checkups, and a discussion of the side effects of medication. *Id.* There was no indication in the treatment records of Dr. Buckley that Claimant suffered from a condition that would cause particular functional limitations.

In February 2013 and April 2013, Dr. Reardon, a specialist in orthopedics, saw Claimant for left medial elbow pain and numbness. R. 577; 624. During physical examination, Dr. Reardon noted that Claimant walked "fully weight bearing" and noted that her cervical spine caused no other shoulder, arm or hand pain, and only mild axial neck discomfort. *Id.* In a follow-up visit, Dr. Reardon diagnosed left wrist tendinitis and left ulnar neuritis. R. 624. Dr. Reardon's treatment

and examination records contained no other information that would support the severe functional limitations listed by Dr. Panzini in the Assessment.

In October 2014, Claimant treated with Dr. Sharon Oglesby at the Halifax Health Center for Family and Sports Medicine. R. 696. During that appointment, Claimant complained of joint pain and fatigue that prevented her from working, but Dr. Oglesby noted that Claimant "has no acute concerns today however does need refills on all her medications." R. 698. Upon examination, Dr. Oglesby found that Claimant's motor functions were "grossly within normal limits" and "Five out of 5 muscle strength in arms and legs." R. 699.

In early 2015, Claimant treated with nurse practitioner Ellen Branoff at Ormond Medical Center. R. 715. At that appointment, Claimant reported sleep problems, but denied any pain, fatigue, or weakness. *Id*. Upon physical examination, Claimant was well developed, well nourished, in no acute distress, and had normal attention span and concentration. *Id*. Also in 2015, Claimant followed up with Ms. Branoff. R. 711. At that appointment, Claimant reported pain, but denied any fatigue or weakness. R. 712. Further, Claimant reported joint pain, stiffness and tenderness, but denied limited joint mobility, muscle pain, muscle weakness, neck pain, back pain, or difficulty walking. *Id*. Upon physical examination, Claimant was well developed, well nourished, in no acute distress, and had normal attention span and concentration. R. 712-13.

Thus, the foregoing medical evidence of record stands in contrast to Dr. Panzini's opinions, as well as Claimant's reported symptoms and testimony, which the ALJ did not find entirely credible.[5] Looking at the record as a whole, the Court finds that the ALJ's determination that Dr.

---

[5] Claimant does not challenge the ALJ's credibility determination, *see* Doc. 13, and, thus, has waived any argument challenging the ALJ's credibility determination. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (refusing to consider an argument that the claimant failed to raise before the district court).

Panzini's opinions were not bolstered by the medical evidence of record is supported by substantial evidence. The medical records, many of which are discussed above, are replete with normal findings during physical examinations, and include findings that Claimant was well-nourished, denied fatigue and weakness, and had full strength and range of motion. To the extent that Claimant cites other evidence in her favor, or to the extent some portion of the foregoing evidence supports Claimant's position, it is not the Court's role to reweigh the evidence, but to determine whether substantial evidence supports the Commissioner's decision. *See Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) ("Even if we find that the evidence preponderates against the Secretary's decision, we must affirm if the decision is supported by substantial evidence.") (citation omitted).

Claimant seems to assert that the ALJ mischaracterized Dr. Panzini's opinions because the ALJ did not list and repudiate each and every functional limitations contained within the Assessment. Doc. 18 at 19-20. While it is accurate that the ALJ did not engage in such a line-by-line analysis, there is no requirement for the ALJ to do so. *See Boone v. Colvin*, 2015 WL 4944093, at *3 (S.D. Ga. Aug. 19, 2015) ("An ALJ's decision also need not address every limitation included in a physician's report as long as the written decision is clear that the ALJ considered both the physician's opinion and the plaintiff's condition as a whole.") (citing *Adams v. Comm'r. Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014)). Here, the ALJ's decision referenced the entirety of the medical records constituting Dr. Panzini's opinions, noted that Dr. Panzini's opinions were opinions that Claimant's scleroderma both "limited her ability to work and justified a finding of disability," and found that that the medical evidence of record "fail[ed] to identify persistent and significant functional limitations." R. 27. Thus, it was clear that the ALJ considered not just Dr.

Panzini's purported opinion that Claimant was disabled,[6] but also the functional limitations contained within Dr. Panzini's opinions, and specifically the severe functional limitations contained within the Assessment. Further, to the extent that certain reasons articulated by the ALJ were conclusory, the Court finds that does not undermine the ALJ's determination to assign no significant weight to Dr. Panzini's opinions. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (per curiam) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it."); *see also Gilmore v. Astrue*, 2010 WL 989635, at *14-18 (N.D. Fla. Feb. 18, 2010) (finding that the ALJ's decision to discount a treating physician's opinion was supported by substantial evidence, even though two of the many reasons articulated by the ALJ were not supported by substantial evidence).

In light of the foregoing, the ALJ has stated good cause to assign no significant weight to Dr. Panzini's opinions. These reasons, as discussed above, are supported by substantial evidence, and, together, support the ALJ's decision to assign no significant weight to Dr. Panzini's opinions. Therefore, the Court finds that the ALJ did not err in assigning Dr. Panzini's opinions no significant weight.

---

[6] The Court notes that the ALJ did not expressly address Dr. Panzini's opinion that Claimant cannot work. *See* R. 545, 673. That opinion addresses the ultimate issue before the Commissioner – whether Claimant is or is not disabled – and, as such, "is not considered a medical opinion and is not given any special significance, even if offered by a treating source [.]" *Kelly v. Comm'r of Soc. Sec.*, 401 F. App'x 403, 407 (11th Cir. 2010) (per curiam); *see* SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) ("[T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). Thus, the ALJ's failure to expressly address that particular opinion does not result in any reversible error.

V.  **CONCLUSION**.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Commissioner and close the case.

**DONE AND ORDERED** in Orlando, Florida on January 17, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Kelley Fitzgerald
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
Desoto Bldg., Suite 400
8880 Freedom Crossing Trail
Jacksonville, FL 32256-1224